15185

BULL v. METROPOLITAN LIFE INS. CO.

(12 S. E. (2d), 24)

November, 1939.

*Messrs. T. A. Houser, W. R. Symmes* and *J. A. Merritt,* for appellant,

*Messrs. Elliott, McLain, Wardlaw & Elliott* and *L. Marion Gressette,* for respondent,

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On the 15th day of November, 1930, in consideration of the payment of an annual premium of $50.49, the defendant issued to the plaintiff its policy insuring her life, in the sum of $1,000.00. The first annual premium was paid in cash, following which the insured was allowed, upon her application, to pay the premium in quarterly installments. On

December 8, 1932, the company loaned her, upon the security of the policy, and upon an application for such loan purporting to have been signed by her, the sum of $13.38. And under like circumstances on March 25, 1933, the company made her another loan in the same amount, both of which were applied on quarterly premium payments, and for which she received from the company its official receipt.

The plaintiff alleges that she did not sign the two applications for the loans in question, but that her signature thereon was forged by Charles N. Mobley, defendant's agent, who maintained his office at Orangeburg, and that she did not receive any part of the loan nor derive any benefit therefrom. The complaint goes on to allege: "That as soon as she found out there was a loan against her said policy she requested the said agent and the defendant to cancel said loan, which defendant refused to do, and the said loan is still outstanding against the policy mentioned herein and plaintiff has been compelled by the defendant to pay the interest thereon in order to keep said policy of force, all of which was done by the defendant to cheat and swindle the plaintiff out of valuable benefits under said policy in an unlawful manner which has caused the plaintiff to expend said sum from which she has not received any value therefor whatever, occasioned by the defendant and its agent aforesaid."

At the conclusion of all of the testimony for the plaintiff and the defendant, the trial Judge, upon motion of the defendant, directed a verdict in its favor, upon the ground that the plaintiff had waived her right to bring the action by paying voluntarily and without protest, for several years, the interest charges on the loans referred to, with full knowledge that such loans were unauthorized, and, according to her contention, were based upon forged instruments.

It appears that the plaintiff carried at least two other policies with the defendant company, insuring the lives of her children—a son and a daughter. In these policies she was named as beneficiary. The plaintiff testified as follows

with reference to the loans: "Mr. Mobley came to my house (in 1931), and asked me if I would be able to take care of the next premium. I told him to be sure. He said I had a loan value on the policy. He said the company would let me·have the money. He told me to get the policies and I told him that my daughter had the policies in Orangeburg. I said that things were pretty tough and if the company would let me have it at five per cent I would prefer borrowing from them, but not on my individual policies. If I could get the money on the children's policies to pay the premium that would be agreeable if we could make that arrangement. I authorized the children to sign for a loan on their policies. I told him that if I could not get enough on the two policies that I did not want to borrow on mine."

These policies were obtained from the daughter in Orangeburg by Mr. Mobley, and loans were obtained upon all three of them, including the one which insured the life of the plaintiff: No issue arises as to the regularity and validity of the loans on the policies insuring the lives of the son and the daughter. The two loans to which we have referred and which were purportedly made upon the plaintiff's written application were, as already stated, applied to the payment of the premium due upon her policy. But she testifies that she had paid these identical premiums in cash to the agent, and that hence the premiums were paid twice. The district agent from the Columbia office testified that the plaintiff's policy, together with the applications for the two loans in question, reached his office in due course, accompaned by all the *indicia* of genuineness. The applications appeared to be entirely regular, signed by the insured and witnessed by Charles N. Mobley, the agent of the company. That on October 15, 1933, which was thirty days before the premium fell due on the following November 15th, notices were mailed to the insured of the due date of the next premium payable on her policy; and a separate notice, showing the amount of interest due upon the loans. The notice with reference to the interest advised her that the amount

was charged against her for loans outstanding against her policy. And every three months thereafter,—that is, from 1933 to 1937,—she received a notice from the company giving the amount of the loans and the amount of interest due thereon. She paid the premiums and the interest charges as they fell due without at any time apprising the defendant company of her claim that she had not signed the applications for the loans, and had not authorized that such loans be made. Nor does the plaintiff contend now that the defendant had any knowledge that such loans were made upon forged signatures, or that the company in any way participated in the alleged conduct of its agent. According to her own testimony, she did not notify the defendant of her present contention until some time in December, 1937, at which time she wrote the defendant's manager in the Columbia office, asking for a personal interview. He promptly replied to her letter, naming a day for a conference, but the date was not convenient to her, and the matter was apparently dropped, and this action soon followed.

According to the testimony of the plaintiff, the agent, Mobley, remained in possession of her policy until he left the employment of the defendant, some time during the latter part of 1933 or the early part of 1934, when it was returned to her by him. She says that the two loan certificates purportedly bearing her signature were attached to the policy, but she knew that the loans had been effected prior to that time because she had received notices from the defendant when the interest payments fell due. She says that prior to the delivery of the policy to her by the agent she tried without success to obtain it from him. But it does not appear that she at any time made any complaint to him with reference to the alleged forgery. When the applications for the loans were introduced in evidence, plaintiff testified that the signatures thereon looked like hers, but she denied their genuineness. Mobley in his testimony swore that the signatures were genuine, and that he had actually seen the plaintiff sign the applications.

As shown by the record, Mobley voluntarily left the employment of the defendant some time in 1933 or 1934, but continued to reside in Orangeburg, where he was engaged in selling automobiles.

The principle is well settled that a person who has been injured by the fraud of another may by conduct inconsistent with an intention to sue for damages for the fraud waive the right to sue just as he may waive any other cause of action. And it is generally held that in order to constitute waiver the defrauded party must act with full knowledge of his rights, and of the material facts constituting the fraud. There can be no waiver where he did not know of the fraud, and had no means of discovering it although knowledge of all the facts tending to prove the fraud is not necessary. It is sufficient if the material facts which go to make it up are known. 12 R. C. L., pages 411, 412; 24 Amer. Jur., § 209, page 34; 27 C. J., § 135, page 22.

The plaintiff, as shown by the record, possessed knowledge and understanding of the wrong which she claims was worked upon her. She admitted that while she knew from the interest notices which she received periodically from 1933 to the commencement of this action in 1938, and from the loan certificates bearing her signature which were attached to the policy, that the loans were charged against her, yet she continued all the while to pay the interest charges without protest. She did not notify the defendant of the alleged forgery, but left it in total ignorance of the fact that the loans had been secured without her authority. For four years she not only knew, according to her testimony, that the fraud had been perpetrated, but she had every means, by communicating with the company, of learning every detail of the transactions.

The plaintiff alleges in her complaint that as soon as she learned of the loans she demanded of the defendant that they be cancelled, but that the defendant refused to

cancel them. This allegation, however, is totally unsupported by the evidence.

Even if it can be assumed from the evidence that the plaintiff was defrauded, as alleged, yet in our opinion she is barred by her own conduct, constituting waiver, from bringing this action, and that the lower Court was correct in so holding.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.