## 15392

### McKAY v. ANHEUSER-BUSCH, INC.

(19 S. E. (2d), 457)

336

October, 1941.

*Messrs. Hagood, Rivers & Young,* of Charleston, for appellant,

*Mr. J. C. Long,* and *Mr. Arthur Rittenburg,* both of Charleston, for respondent,

March 23, 1942.

The opinion of the Court was delivered by CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE.

This appeal is from an order of Honorable E. C. Dennis, Circuit Judge, refusing to strike out portions of an amended complaint, and refusing to strike out the entire amended complaint, on the grounds of alleged non-compliance with an order to make definite and certain; and overruling a demurrer to the amended complaint.

After alleging that appellant is engaged in the manufacture and sale of beer, which is sold by it in the original kegs, and that respondent operates a retail beer parlor in the City of Charleston, the original complaint then alleged as follows:

"Fourth: That each of said kegs was labeled and represented by the defendant to contain fifteen and one-half (15½) gallons of beer, which representation was false and known by the defendant to be false, and made for the purpose of deceiving the plaintiff.

"Fifth: That, acting in reliance on said representation, the falsity of which was unknown to plaintiff, from April, 1934, to April, 1938, the plaintiff purchased about eight hundred thirty-two (832) kegs of 'Budweiser' beer * * * for sale in his business known as the 'Rathskeller,' and each of said kegs was labeled by the defendant and represented to the plaintiff as containing fifteen and one-half (15½) gallons of beer.

"Sixth: That, upon information and belief, and by actual tests made, the plaintiff ascertained that the said eight hundred thirty-two (832) kegs of beer sold to him as containing fifteen and one-half (15½) gallons each did not contain that quantity, but contained considerably less, the shortage averaging about four (4) gallons of beer per keg.

"Seventh: That by reason of the said mislabeling and misrepresentation and fraud of the defendant, resulting in said shortage, the plaintiff sustained a loss of about Three ($3.00) Dollars per keg on eight hundred thirty-two (832) kegs of beer, and was thereby cheated and defrauded, all to his damage in the sum of Three Thousand ($3,000.00) Dollars."

Upon motion of defendant, Honorable G. B. Greene, Circuit Judge, ordered plaintiff to make this complaint more definite in the following particulars:

1. By setting forth in the fifth paragraph the date of the purchases and the amount of the purchases and the number of kegs purchased on each occasion.

2. By setting forth in the sixth and seventh paragraphs the date of each purchase, the number of kegs purchased, and the amount of shortage alleged as to each keg.

Pursuant to this order plaintiff served his amended complaint in which he set forth the fourth, fifth, sixth and seventh paragraphs as follows:

"Fourth: That each of said kegs was labeled and represented by the defendant to contain fifteen and one-half (15½) gallons of beer, which representation was false and known by the defendant to be false, and made for the purpose of deceiving the plaintiff.

"Fifth: That, acting in reliance on said representation, the falsity of which was unknown to plaintiff, from about July, 1934, to about April, 1938, the plaintiff purchased a large number of kegs of Budweiser beer, as shown on the annexed schedule marked 'Exhibit A,' through the defendant's agent * * * for sale in his business known as the 'Rathskeller,' and each of said kegs was labeled by the de-

fendant and represented to the plaintiff as containing fifteen and one-half (15½) gallons of beer.

"Sixth: That, upon information and belief, and by actual tests made, the plaintiff ascertained that the said kegs of beer sold to him as containing fifteen and one-half (15½) gallons each did not contain that quantity, but contained considerably less, the shortage averaging about two and seven-tenths (2.7) gallons of beer per keg.

"Seventh: That by reason of the said mislabeling and misrepresentation and fraud of the defendant, resulting in said shortage, the plaintiff sustained a loss of about Two and 9/100 ($2.09) Dollars per keg on said kegs of beer, and was thereby cheated and defrauded, all to his damage in the sum of Three Thousand ($3,000.00) Dollars."

Attached to this amended complaint was a schedule, marked as "Exhibit A," setting forth the date, amount, purchase price, and alleged shortage of each purchase of beer relied upon by plaintiff. It shows that the unit of purchase was a half barrel, the price of each half barrel was twelve ($12.00) dollars, that the alleged shortage as to each half barrel was two and 7/10 (2.7) gallons, and that five hundred and fourteen (514) half barrels were purchased between July 1, 1934, and April 30, 1938.

Thereupon defendant moved before Honorable E. C. Dennis, presiding Judge, for an order striking out the words "averaging about" in the fifth line of the sixth paragraph, striking out the whole sixth paragraph, striking out the word "about" in the third line of the seventh paragraph, striking out the entire seventh paragraph, and dismissing plaintiff's amended complaint, all on the ground of failure on the part of plaintiff to comply with the order of Judge Greene to make the original complaint more definite and certain.

Judge Dennis, after hearing the motion, issued his order refusing it on the ground that the amended complaint was in substantial compliance with Judge Greene's order to make more definite and certain. The defendant now appeals from this order of Judge Dennis.

A pleading is required made more definite and certain in order to relieve the adversary from some disadvantage, either in the preparation of his own pleading or in the preparation by way of witnesses and proof necessary to meet the issues at the time of trial.

A party to a cause who has been ordered to make his pleading more definite and certain is required to show good faith, and to exercise substantial compliance with the order to the extent of his ability.

We are of the opinion that respondent, in obedience to the order of Judge Greene, has met these requirements. Appellant's first five exceptions must therefore be overruled.

Appellant further charges error in the refusal of Judge Dennis to sustain its demurrer to the amended complaint.

The defendant demurred to the amended complaint on the ground that it does not state a cause of action, because:

"Plaintiff in the amended complaint alleges a continuing shortage of two and seven-tenths (2.7) gallons which was discovered as to each half barrel or keg of beer purchased at the time that the said beer was used, and that the plaintiff by continuing his purchases and accepting and retaining the kegs which the plaintiff knew were short, waived any right to hold the defendant liable for the said shortages, which were well known to the plaintiff.

"That the amended complaint shows on its face that the plaintiff was not misled as to the contents of the kegs of beer, and that he cannot be heard to complain that he was misled as to a matter that was within his knowledge at the time that the purchases were made, and waived any claim for shortage by the acceptance of the kegs and the continuing purchase of kegs which he knew turned out to be short, all in the same identical amount."

Judge Dennis overruled this demurrer, being of the opinion that the amended complaint sufficiently states a cause of action for actionable fraud. With this ruling we are in accord.

To constitute actionable fraud there must appear: (1) a representation; (2) its falsity; (3) its materiality; (4) the author's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the other party's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury thereby.

It is our opinion that the amended complaint contains allegations sufficient to state a cause of action for actionable fraud.

It is ordered that the appeal herein be dismissed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.

MR. CHIEF JUSTICE BONHAM and MR. ASSOCIATE JUSTICE BAKER dissent.

MR. CHIEF JUSTICE BONHAM (dissenting) : I find myself out of accord with the position taken by Mr. Acting Associate Justice Grimball in sustaining the Circuit order which overruled the appellant's demurrer to the amended complaint. The demurrer states in part:

"That the Amended Complaint shows on its face that the Plaintiff was not misled as to the contents of the kegs of beer, and that he cannot be heard to complain that he was misled as to a matter that was within his knowledge at the time that the purchases were made, and waived any claim for shortage by the acceptance of the kegs and the continuing purchase of kegs which he knew turned out to be short * * *."

In overruling this demurrer, the Circuit Judge assigned no reasons other than to state in his order that: " * * * in view of the allegations of the Fourth Paragraph of the Amended Complaint, taken in connection with the other portions thereof, the Demurrer should be overruled."

The paragraph of the amended complaint, cited above in the Circuit order, alleges only that each of the kegs was labeled and represented by the defendant to contain fifteen and one-half gallons of beer, and that this was a false rep-

resentation made by the defendant for the purpose of deceiving the plaintiff. I cannot see in this paragraph, or in the complaint as a whole, such allegations as would enable this Court to hold that an action for fraud has been stated.

The appellant's sixth exception is based on the above-quoted portion of the circuit order, and reads: "That the Court erred in overruling the Demurrer to the Complaint, because the Complaint shows on its face that the Plaintiff purchased, used and paid for several hundred kegs of beer, each of which he alleges turned out to be short * * *, and that he cannot complain that he was misled as to a matter which was within his knowledge, and that his gross contributory negligence would bar a recovery * * *."

In passing upon this sixth exception, the only reason given in the main opinion for sustaining the Circuit order is a statement of the nine essentials of actionable fraud, two of which are "the other party's ignorance of its falsity" and "his reliance on its truth."

Taking the amended complaint as a whole, how can it be said here that either of these two essentials is properly alleged? This action was begun in March, 1939. Exhibit "A" of the complaint itemizes twenty separate kegs of beer purchased on various dates during the month of July, 1934. Each of these kegs, purchased nearly five years prior to the commencement of the action, is described thus in Exhibit "A": "Shortage—2.7 gal." Then follows a substantially similar volume of beer purchased each succeeding month until April, 1938, on various dates of which month are shown purchases of thirty-nine separate kegs of beer, each of which is described as being short in the amount of 2.7 gallons.

In the sixth paragraph of the complaint, we find the allegation that "the plaintiff ascertained" that shortages existed "by actual tests made." In my opinion, the allegations in the sixth paragraph, combined with the specific, exact shortages alleged in Exhibit "A" covering particular kegs of beer bought on definitely specified dates extending back

nearly five years prior to the commencement of the action, overwhelmingly refute any effort by the plaintiff to make the complaint show on its face that he was ignorant of the alleged shortages. Such positive allegations, on their face, are inconsistent with the solitary effort which the plaintiff makes, in the fifth paragraph, to allege that the "falsity" of the representation was unknown to him. In the very paragraph in which he attempts to allege his reliance on the truth of the representation, he calls our attention to Exhibit "A," which shows on its face, over and over again, that the plaintiff continued, at intervals of every few days, over a period of years, to purchase kegs of beer, each of which contained shortages of 2.7 gallons. How, then, can he be said to have properly alleged the two necessary elements of fraud: his reliance on the truth of the representations, and his igorance of their falsity? In my opinion the amended complaint shows on its face that these two essentials of actionable fraud could not have existed concurrently, because the inconsistent allegations are too repugnant to each other to state the elements of a cause of action in fraud.

It is a necessary implication from Exhibit "A" that the plaintiff could not have relied on the truth of the representations which he alleges if the "actual tests" were made by which the plaintiff alleges in his sixth paragraph that he ascertained the shortage. These purchases were made every few days over a period of years. If actual tests revealed shortages in the twenty kegs purchased at intervals during the month of July, 1934, for example, or for any succeeding month in the early years of these transactions, then there could have been no reliance on the subsequent representations that each keg contained fifteen and one-half gallons. If the plaintiff relied on his actual tests, he was not deceived, for he was neither ignorant of the contents of the kegs nor was he relying upon any alleged representation. His repeated purchases made regularly for years after his experience with finding a shortage of 2.7 gallons in each of the kegs purchased in July, 1934, would indicate that he was not acting

under any misapprehension of facts; otherwise, why did he not discontinue buying from the defendant after July, 1934?

It is true that we are not told when the actual test was made as to the July, 1934, shortage, or subsequent ones, but there is no allegation that the plaintiff had no means of ascertaining the alleged fraud. It is evident from Exhibit "A" that he not only could have discovered the true contents of the kegs, but that he did discover it, for actual tests were made by which he discovered shortages of 2.7 gallons in each keg purchased during the first month of his transactions with the defendant. If he relied on his tests, he was not deceived. If he relied on the representations, he did not rely on the tests upon which he bases his claim. If he relied on the tests, upon which he now relies, he was not ignorant of the contents of the kegs; and if such tests as could have been made were not made until later, the plaintiff cannot now be held to have had no means of discovering the alleged fraud In fact, he makes no such allegations.

A case which has long been followed in this State is that of *Griggs-Paxton Shoe Company v. A. Friedheim & Bro.*, 133 S. C., 458, 131 S. E., 620, in which the purchaser accepted shoes that came in bound boxes and put them in a warehouse for thirty days before inspecting them, and at the end of that period attempted to reject the shoes. This Court, after pointing out the evils which were attendant upon delay in that case, said at page 466 of 133 S. C., at page 623 of 131 S. E.: " * * * as a matter of law, this court holds that the defendant, having kept them during a period of more than one month, is deemed to have accepted them and waived any defect either of workmanship or of quality. To hold otherwise would subject the seller to the whims of the purchaser."

In the later case of *Monroe v. Wood*, 186 S. C., 507, 197 S. E., 39, the plaintiff had purchased ice from the defendant and had accepted and paid for it. The alleged defect was a patent one, but the plaintiff continued to buy and use the ice which he knew to be of an inferior quality. The defendant

made a motion for a directed verdict on the ground that plaintiff had waived the alleged defect by his acceptance and use of the ice. This Court held that the trial Judge erred in not directing a verdict for the defendant, and, after citing the case of *Griggs-Paxton Shoe Company v. Friedheim & Bro., supra,* said at page 513 of 186 S. C., at page 42 of 197 S. E.: "If the plaintiff had refused to accept the ice which he claims was defective, he would have had a cause of action against defendant for all relevant damages he may have suffered. But when for five years he accepted daily the alleged defective ice and used it he waived his right to sue for damages.   *   *   * "

In the case of *Bond Bros. Cash & Delivery Grocery, Inc., v. Claussen's Bakeries, Inc.,* 184 S. C., 95, 191 S. E., 717, 113 A. L. R., 675, the defendant employed a driver to make deliveries to the plaintiff, who purchased and paid for the articles delivered. Both parties to the action had every confidence in the integrity of the driver, and the plaintiff did not check up on the quantity of articles delivered, although he could easily have done so. A shortage later developed, and the plaintiff brought action for fraud. This Court said at page 101 of 184 S. C., at page 719 of 191 S. E.:

"We are of the opinion that respondent [plaintiff] having had every opportunity of checking the deliveries, and having failed so to do, it has waived the right and is estopped from coming into court and undertaking to prove a shortage in such deliveries. The testimony shows such gross negligence and gross carelessness on the part of respondent that this court, even as to fraudulent acts on the part of appellant's agent, which were made possible by the gross negligence and carelessness of respondent, does not hesitate to invoke the doctrine of estoppel by waiver."

It will be noted that the foregoing case, like the case at bar, was an action in fraud.

In the case of *Zuckerman & Katz v. American Table Water Company,* 26 Pa. Dist. R., 599, 113 A. L. R., 687, an action was brought by the seller for the purchase price

of certain goods. The buyer pleaded as a set off the alleged overpayment by him for some merchandise previously purchased, as to which he failed to make any objection or complaint for three years after the alleged overpayment. The Pennsylvania Court held that the defendant had every opportunity to ascertain whether or not a mistake or fraud had been committed and to make prompt demand for its correction. In that case the Court said: "There is no allegation that it did not have full opportunity to inspect the goods as they arrived, nor that it did not have full knowledge of what it had received at the time it made these payments. Can it, then, after years have passed, make the demand in the nature of a set-off to the subsequent bill? We are of the opinion that it cannot."

The respondent in the instant case contends that the *Pennsylvania case,* just cited, is not applicable here for the reason that the complaint in the instant case alleges the respondent's ignorance of the falsity of the representations. However, as I have previously pointed out, such allegation is, in my opinion, negatived by the allegations contained in Exhibit "A," which indicate full knowledge "by actual tests made."

The respondent cites and apparently relies strongly on the case of *Building Supply Company v. Jones,* 87 S. C., 426, 69 S. E., 881, which was an action for the price of lumber which the defendant alleged to be defective. The question was whether the buyer had waived the defects by acceptance of the lumber, and this Court said at page 428 of 87 S. C., at page 882 of 69 S. E.:

" * * * The general rule is that if, before acceptance of goods, material variance from the quality contracted for is so obvious that the purchaser has observed it, or by ordinary inspection would have observed it, and nevertheless accepted the goods, he will be held to have waived the variance from the quality he was entitled to demand. [Citing cases.] But if the defects are not so obvious to ordinary inspection, and are not actually discovered until after accept-

ance, then the purchaser may, according to the circumstances, offer to return the goods and have rescission of the contract, or retain them and have an abatement of the price. * * * Whether the buyer has had the opportunity to inspect and reject the goods is ordinarily a question of fact for the jury."

The case above which the respondents deem to be controlling, is utterly different from the case at bar. In the quoted case there was apparently one contract for lumber, covering one transaction between the parties. In the instant case the transactions were repeated in almost an innumerable succession of purchases over a period of years, during which no complaint was made, and during which the appellant had every reason to believe that he was furnishing satisfaction to his customer.

Although it is true that in the case of *Building Supply Company v. Jones, supra,* this Court said: "Whether the buyer has had the opportunity to inspect and reject the goods is ordinarily a question of fact for the jury," this is not always the case, as we have already seen in the case of *Griggs-Paxton Shoe Company v. Friedheim & Bro., supra,* in which this Court, after stating the matters earlier quoted from that case, said at page 466 of 133 S. C., at page 623 of 131 S. E.: "This does not violate the rule that this is ordinarily a question of fact to be left to the jury. When there is no dispute about a fact, and *it is subject to only one reasonable inference,* there is no longer anything for the jury to determine, * * *." (Emphasis added.)

In my opinion the case just cited, and the other recent authorities quoted herein, are more authoritative in the present case than is the older case cited by the respondent in which the facts of the solitary lumber transaction were entirely different from the facts in the case before us.

The respondent, in his brief, points out that some of the authorities cited by the appellant are concerned with actions for breach of contract or breach of warranty, and argues

that the appellant "seems to have overlooked this fact in the citation of cases, which are not directly concerned with actions for fraud and deceit, * * *." Although the respondent himself relies on cases in his brief which are not actions for fraud and deceit, and should not have great weight if his argument in that respect be correct, I have, nevertheless, given due consideration to both classes of cases, those arising from breach of contract and those arising from fraud.

The respondent attempts to bolster his opinion by citing the case of *Bull v. Metropolitan Life Insurance Company,* 195 S. C., 536, at page 541, 12 S. E. (2d), 24, 26, in which this Court said: "The principle is well settled that a person who has been injured by the fraud of another may by conduct inconsistent with an intention to sue for damages for the fraud waive the right to sue just as he may waive any other cause of action. And it is generally held that in order to constitute waiver the defrauded party must act with full knowledge of his rights, and of the material facts constituting the fraud. There can be no waiver where he did not know of the fraud, *and had no means of discovering it* * * *." (Emphasis added.)

Although the foregoing case was cited by the respondent, it impresses me as an apt authority for the appellant, for in the case now before us there is nowhere an allegation in the amended complaint that the plaintiff had no means of discovering the alleged fraud. Similarly, if actual tests were made on the kegs of beer purchased in July, 1934, as is alleged, and if each of the twenty kegs purchased during that month was short in the amount of 2.7 gallons, as is alleged in Exhibit "A," then the amended complaint shows on its face that if any fraud existed, the plaintiff knew of it, and thereby, by his silence for nearly five years, waived his right to complain.

For all of the foregoing reasons, I am of the opinion that the demurrer should have been sustained, and that the judg-

ment of the Circuit Court should be reversed, in this respect, and the sixth exception sustained.

Mr. Associate Justice Baker concurs.